Citation Nr: 1706040 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 09-50 948 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for residuals of left wrist fracture.

2. Entitlement to an initial rating in excess of 30 percent for bronchial asthma.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran




ATTORNEY FOR THE BOARD

T. Carter, Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from October 1987 to July 1990.

This case comes before the Board of Veterans' Appeals (Board) on appeal from October 2006 and June 2008 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio.

In August 2010, the Veteran testified at a video conference hearing before a Veterans Law Judge who has since retired. 

In February 2011, the Board remanded the case for additional evidentiary development. Before the case was returned to the Board, the Veteran was notified by letter in April 2012 that the Veterans Law Judge who conducted the August 2010 hearing was no longer employed by the Board, and the Veteran requested another video conference hearing before the Board.

In May 2012, the Board remanded the case to schedule the Veteran for the requested video conference hearing. In March 2013, the Veteran was notified by letter that he was scheduled for a video conference hearing in May 2013, and prior to the hearing date the Veteran requested that hearing be rescheduled. In June 2013, the Veteran was notified by letter that the hearing was rescheduled in August 2013, and again prior to the hearing date the Veteran requested that hearing be postponed. In February 2014, the Veteran was notified by letter that he was scheduled for a hearing in March 2014. The February 2014 notice was sent to the most recent address of record. The Veteran failed to appear for the March 2014 hearing and, as of this date, no response has been received by the Veteran. Accordingly, his request for an additional hearing is considered withdrawn. 38 C.F.R. § 20.704(d) (2016). 
In April 2016, the Board remanded the case for additional evidentiary development, and it has been returned to the Board for appellate review.


FINDINGS OF FACT

1. For the entire initial rating period on appeal, the Veteran's service-connected residuals of left wrist fracture have not been manifested by ankylosis.

2. For the entire initial rating period on appeal, the Veteran's service-connected bronchial asthma more closely approximates manifestations of, at worst, Forced Expiratory Volume in one second (FEV-1) of 63-percent predicted before bronchodilator and 67-percent predicted thereafter, FEV-1/Forced Vital Capacity (FVC) of 57.2 percent before bronchodilator and 58.9 percent thereafter, use of daily inhalational bronchodilator therapy and oral bronchodilator therapy, and courses of systemic corticosteroid twice within a one-year period, with no monthly visits to a physician for required care of exacerbations, more than one attack per week with episodes of respiratory failure, or intermittent or required daily use of systemic corticosteroids or immuno-suppressive medications.


CONCLUSIONS OF LAW

1. The criteria for entitlement to an initial rating in excess of 10 percent for residuals of left wrist fracture have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107, 5110(a) (West 2014); 38 C.F.R. §§ 3.102, 3.103, 3.159, 3.321, 3.327, 4.1, 4.2, 4.3, 4.7, 4.20, 4.21, 4.27, 4.40, 4.45, 4.71a, Diagnostic Codes 5099-5024, 5214, 5215 (2016).

2. The criteria for entitlement to an initial rating in excess of 30 percent for bronchial asthma have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107, 5110(a); 38 C.F.R. §§ 3.102, 3.103, 3.159, 3.321, 3.327, 3.655, 4.1, 4.2, 4.3, 4.7, 4.21, 4.97, Diagnostic Code 6602 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

As service connection, an initial rating, and an effective date have been assigned for the issues on appeal, the notice requirements of 38 U.S.C.A. § 5103(a) have been met.

VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantive a claim to include where warranted by law, and affording the claimant VA examinations, VA medical opinions, and a hearing before the Board. 38 U.S.C.A. §§ 5103, 5103A. There is no objective or subjective evidence indicating that there has been a material change in the severity of the Veteran's service-connected residuals of left wrist fracture or bronchial asthma on appeal since he was last examined in May 2016. 38 C.F.R. § 3.327(a). The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. VAOPGCPREC 11-95; 60 Fed. Reg. 43186 (1995).

The Board acknowledges the Veteran's representative's request in the January 2017 written brief for "if the Board is unable to grant to the increased evaluations to exercise authority under 38 C.F.R. §§ 3.328 and 20.901(d) [and for] and Independent Medical Opinion from an expert outside of the VA to resolve the issue at hand." It was explained that the evidence is in conflict as to the severity of the conditions. As will be discussed in the decision below, the evidentiary record contains competent lay and medical evidence to decide the claims on appeal. 

While a May 2016 VA examination report notes the Veteran's receipt of "Social Security Disability (SSD) benefits, mental health," there is no indication of record, nor has the Veteran sufficiently identified, that these records are relevant to the service-connected residuals of left wrist fracture or bronchial asthma discussed in this case. See Golz v. Shinseki, 590 F.3d 1317 (Fed. Cir. 2010); Sullivan v. McDonald, 815 F.3d 786, 793 (Fed. Cir. 2016) (citing 38 C.F.R. § 3.159(c)(3)). As a result, there is no evidence that additional relevant records have yet to be requested for these claims on appeal. 

There was also substantial compliance with the February 2011, May 2012, and April 2016 remand directives. Stegall v. West, 11 Vet. App. 268 (1998). As noted above, the RO complied with the Board's directive to schedule the Veteran for a hearing. The VA examinations for the Veteran's asthma are adequate because they were based upon consideration of the Veteran's pertinent medical history, his lay assertions and current complaints, and because they describe his asthma in detail sufficient to allow the Board to make a fully informed determination. Ardison v. Brown, 6 Vet. App. 405, 407 (1994). The Board notes that the VA examinations conducted for his left wrist did not test passive motion or motion in weight-bearing. Correia v. McDonald, 25 Vet. App. 158 (2016). However, another remand for a new examination is not needed in this case, as the only way by which the Veteran may receive a higher disability rating for his left wrist is if he has ankylosis. Ankylosis is the immobility of a joint. Lewis v. Derwinski, 3 Vet. App. 259 (1992) (indicating that ankylosis is complete immobility of the joint in a fixed position, either favorable or unfavorable). The record clearly shows that the Veteran retains mobility in his left wrist. A remand for an examination that complies with Correia is not needed in this case because Correia pertains to the ability to move a joint under various conditions. It is therefore irrelevant to whether the Veteran has ankylosis. In sum, there is no evidence of any VA error in notifying or assisting him that reasonable affects the fairness of this adjudication. 38 C.F.R. § 3.159(c).

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate Diagnostic Codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the veteran's favor. 38 C.F.R. § 4.3.

When entitlement to compensation has been established and a higher initial evaluation is at issue, such as for the service-connected residuals of left wrist fracture and bronchial asthma in this case, the level of disability at the time entitlement arose is of primary concern. Consideration must also be given to a longitudinal picture of a veteran's disability to determine if the assignment of separate ratings for separate periods of time, a practice known as "staged" ratings, is warranted. See Fenderson v. West, 12 Vet. App. 119 (1999). If later evidence obtained during the appeal period indicates that the degree of disability increased or decreased following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time based on facts found. Id; see also Hart v. Mansfield, 21 Vet. App. 505 (2007) (VA's determination of the "present level" of a disability may result in a conclusion that the disability has undergone varying and distinct levels of severity throughout the entire time period the increased rating claim has been pending.).

The Veteran filed his initial claims requesting service connection for residuals of left wrist fracture and bronchial asthma on November 14, 2005. In the October 2006 VA rating decision, service connection was granted because the disabilities were deemed to be directly related to his military service. Within one year, an April 2007 Report of Contact, VA Form 119, noted the Veteran's desire to claim an increase for these disabilities. A March 2008 VA Form 119 reiterated his intent for higher disability ratings. The assigned disability ratings were confirmed and continued in the June 2008 VA rating decision.

Residuals of Left Wrist Fracture

In the November 14, 2005 VA Form 21-4138, the Veteran reported that since his in-service injury, he constantly suffers from stiffness, soreness, aches and pains, and difficulty with any type of range of motion with his wrist. In an April 2008 VA Form 21-4138, the Veteran also reported his left wrist is stiff and sore every day. The Veteran's representative reported in the June 2010 VA Form 646 that the Veteran continues to seek medical care and has aggravation of and chronic pain associated with any movement of the affected wrist. Most recently in the January 2016 written brief, it was noted the Veteran asserts there is increased loss of range of motion with flare-ups in the left wrist. The Veteran also reported at the August 2010 Board hearing that symptoms of his left wrist fracture include swelling, pain, and locking up, and physical production at work decreased because of pain in the left wrist. The lay statements regarding his observable symptoms are competent and credible. 

In the October 2006 VA rating decision, the Veteran's residuals of left wrist fracture were assigned a 10 percent disability rating for painful or limited motion of a major joint or group of minor joints for the entire appeal period effective from November 14, 2005. See 38 C.F.R. § 4.71a, Diagnostic Codes 5099-5024 (tenosynovitis). In this case, the Board considers whether a rating in excess of 10 percent is warranted at any time since or within one year prior to the date of claim on November 14, 2005. 

Hyphenated Diagnostic Codes are used when a rating under one Diagnostic Code requires use of an additional Diagnostic Code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27. When an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the Diagnostic Code number will be assigned as follows: the first two digits will be selected from that part of the schedule most closely identifying the part, or system of the body involved, in this case, the musculoskeletal system, and the last two digits will be 99 for all unlisted conditions. Then, the disability is rated by analogy under a Diagnostic Code for a closely related disability that affects the same anatomical functions and has closely analogous symptomatology. 38 C.F.R. §§ 4.20, 4.27. Thus, in this case, Diagnostic Code 5099 denotes an unlisted condition of the musculoskeletal system, and the RO determined that the rating criteria most analogous to the Veteran's service-connected residuals of left wrist fracture is encompassed under Diagnostic Code 5024 for the entire appeal period. 

The diseases under Diagnostic Codes 5013 through 5024 will be rated on limitation of motion of affected parts, as arthritis, degenerative, except gout which will be rated under Diagnostic Code 5002. See 38 C.F.R. § 4.71a, Note. In this case, the Veteran does not have arthritis or gout in the left wrist, as noted in the VA treatment records and VA examination reports of record; therefore, analysis under Diagnostic Codes 5002, 5003 and 5010 is not relevant and will not be discussed in this case.

Pertinent to this appeal, the Schedule of Ratings for the Musculoskeletal System provides the following rating criteria for the wrist under Diagnostic Codes 5215 and 5214. See 38 C.F.R. § 4.71a. 

Diagnostic Code 5215 provides a 10 percent disability rating, the maximum available, for limitation of motion of the wrist. As a result, an initial rating in excess of the currently-assigned 10 percent disability rating under Diagnostic Code 5215 is not available in this case.

Diagnostic Code 5214 provides disability ratings in excess of 10 percent for ankylosis of the wrist. Ankylosis is the complete immobility of a joint in a fixed position, either favorable or unfavorable. Lewis, 3 Vet. App. 259. Review of the evidentiary record does not indicate the service-connected residuals of left wrist fracture have been manifested by ankylosis to warrant an initial rating in excess of 10 percent. The evidentiary record includes VA treatment records dated from May 2005 to July 2016 and VA examination reports dated September 2006, April 2008, March 2011, and May 2016, which document active range of motion findings of the Veteran's left wrist. 

The Board has considered functional loss due to pain or painful motion where limitation of motion. See 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995). Given that the Veteran is already in receipt of the schedular maximum for limitation of motion of the wrist, inquiry into the DeLuca factors is moot. Johnston v. Brown, 10 Vet. App. 80, 87 (1997).

The Board has also considered the Veteran's reported history of symptoms for his service-connected residuals of left wrist fracture. It is acknowledged that he is competent to report such symptoms and observations because this requires only personal knowledge as it comes through his senses. Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, the Veteran in this case is not competent to identify specific levels of this service-connected musculoskeletal disability according to the appropriate Diagnostic Codes and relevant rating criteria, as this would require inquiry into internal biological processes, anatomical relationships, and physiological functioning. The Veteran in this case has not been shown by the evidence of record to possess the training or skills needed to accomplish this. In this case, such competent evidence concerning the nature and extent of the Veteran's residuals of left wrist fracture has been provided in the medical evidence of record. As such, the Board finds these records to be more probative than the Veteran's subjective reports and worsened symptomatology. See Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991).

Bronchial Asthma

In the October 2006 VA rating decision, the Veteran's bronchial asthma was assigned a 30 percent disability rating for the entire appeal period effective from November 14, 2005. See 38 C.F.R. § 4.97, Diagnostic Code 6602. In this case, the Board considers whether a rating in excess of 30 percent is warranted at any time since or within one year prior to the date of claim on November 14, 2005. 

Diagnostic Code 6602 provides the following rating criteria for bronchial asthma: 30 percent is assigned for FEV-1 of 56- to 70-percent predicted, or; FEV-1/FVC of 56 to 70 percent, or; daily inhalational or oral bronchodilator therapy, or; inhalational anti-inflammatory medication; 60 percent is assigned for FEV-1 of 40- to 55-percent predicted, or; FEV-1/FVC of 40 to 55 percent, or; at least monthly visits to a physician for required care of exacerbations, or; intermittent (at least three per year) courses of systemic (oral or parenteral) corticosteroids; and 100 percent, the maximum available, is assigned for FEV-1 less than 40-percent predicted, or; FEV-1/FVC less than 40 percent, or; more than one attack per week with episodes of respiratory failure, or; required daily use of systemic (oral or parenteral) high dose corticosteroids or immuno-suppressive medications.

The currently assigned 30 percent rating for bronchial asthma contemplates the Veteran's use of daily inhalational bronchodilator therapy and oral bronchodilator therapy, as documented in VA examination reports dated September 2006, April 2008, March 2011, an May 2016, as well as VA treatment records dated from May 2005 to January 2008 and January 2009 to July 2016. VA treatment records specifically document the Veteran's list of medications include Formoterol fumarate, Mometasone furoate, and Albuterol for symptoms of shortness of breath and breathing. The record shows that all of these medications are inhaled. Mometasone furoate is a corticosteroid; however, the rating criteria differentiates between inhaled medications, which are contemplated in the 30 percent rating criteria, and oral or parental medications which are contemplated by the 60 percent criteria. In addition, while the Veteran informed the March 2011 VA examiner that he went to the VA clinic for his asthma and received three cortisone injections, review of his VA treatment records show he received Kenalog corticosteroid injections for his asthma in August 2010, October 2010, and February 2011. 

Nevertheless, the criteria for an evaluation in excess of 30 percent have not been met. As noted above, the Veteran received courses of systemic corticosteroids, at most, twice within a one-year period in 2010. VA treatment records are silent for any intermittent (at least three per year) or required daily use of systemic corticosteroids or immuno-suppressive medications for his service-connected asthma at any time during the appeal period. 

In addition, clinical findings do not reveal FEV-1 of 55-percent predicted or less or FEV-1/FVC of 40 to 55 percent. In fact, on VA examination in September 2006 for nose, sinus, larynx and pharynx, pulmonary function test (PFT) results revealed FEV-1 of 66-percent predicted before bronchodilator and 71-percent predicted thereafter, and FEV-1/FVC of 59.5 percent before bronchodilator and 61.2 percent thereafter. At the April 2008 VA respiratory examination, PFT results revealed FEV-1 of 65-percent predicted before bronchodilator and 72-percent predicted thereafter, and FEV-1/FVC of 57.2 percent before bronchodilator and 58.9 percent thereafter. At the March 2011 VA respiratory examination, PFT results revealed FEV-1 of 63-percent predicted before bronchodilator and 67-percent predicted thereafter, and FEV-1/FVC of 59.6 percent before bronchodilator and 61 percent thereafter. 

Most recently at the May 2016 VA Disability Benefits Questionnaire (DBQ) examination for respiratory conditions, PFT results were unavailable. The VA examiner noted on June 24, 2016 that the Veteran was scheduled for PFTs on June 23, 2016 but failed to appear to the scheduled appointment, thus the results from March 2011 were provided in the May 2016 VA examination report. As of this date, there is no indication that the Veteran failed to report for good cause; therefore, this claim will be decided based on the evidence of record, to include the PFT results from September 2006, April 2008, and March 2011. See 38 C.F.R. § 3.655.

The evidentiary record also does not demonstrate the Veteran's service-connected bronchial asthma has been manifested by monthly visits to a physician for required care of exacerbations or more than one attack per week with episodes of respiratory failure at any time during the appeal period.

The September 2006 VA examiner noted the Veteran does not go to the hospital for asthmatic attacks. The April 2008 VA examiner noted the Veteran has asthma attacks 3 to 4 times a week which require him to "leave the room or immediate area" or uses his Albuterol rescue inhaler, and the Veteran did not have periods of incapacitation for asthma in the past year. At the March 2011 VA respiratory examination, the Veteran reported having frequent productive cough, shortness of breath with exertion of walking less than half a mile or a flight of stairs, and his symptoms were worse during the summer of 2010 when he lived with is mother who owned a cat. The April 2008 and May 2016 VA examiners also documented the Veteran's history of asthma did not include the requirement of outpatient oxygen therapy.

In an April 2008 VA Form 21-4138, the Veteran reported his asthma has gotten worse and he has had a hard time completing work because some orders trigger his asthma. In the December 2009 substantive appeal, VA Form 9, the Veteran reported his asthma has been getting severe for a few years. He explained that he has asthma attacks once or more a week that last for 20 minutes or longer. At the August 2010 Board hearing, the Veteran further reported his asthma worsened as evidenced by an increase in prescribed medication, to include a corticosteroid inhaler used twice a day, and he visits a doctor once a month for asthma. While VA treatment records document the Veteran's ongoing treatment and symptoms for the service-connected bronchial asthma, such a review does not demonstrate monthly visits to a physician for required care of exacerbations from asthma.

Moreover, throughout the appeal period, the Veteran's representative reported in the June 2010 VA Form 646 that the Veteran uses two separate inhalers multiple times per day, in order to breathe, continues to have prostrating attacks, and has been treated with corticosteroids on several different occasions. In the January 2016 written brief, it was noted the Veteran asserts he has shortness of breath and wheezing due to his asthma.

The Board has considered the Veteran's reported history of symptoms for his service-connected bronchial asthma. It is acknowledged that he is competent to report such symptoms and observations because this requires only personal knowledge as it comes through his senses. Layno, 6 Vet. App. at 470. However, the Veteran in this case is not competent to identify specific levels of this service-connected respiratory disability according to the appropriate Diagnostic Codes and relevant rating criteria, as this would require inquiry into internal biological processes, anatomical relationships, and physiological functioning. The Veteran in this case has not been shown by the evidence of record to possess the training or skills needed to accomplish this. In this case, such competent evidence concerning the nature and extent of the Veteran's bronchial asthma has been provided in the medical evidence of record. As such, the Board finds these records to be more probative than the Veteran's subjective reports and worsened symptomatology. See Cartright, 2 Vet. App. at 25.

Additional Considerations

The Board has considered other potentially applicable Diagnostic Codes. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). In this case, the evidence does not reflect that there are any other musculoskeletal disorders of the wrist that the Veteran's residuals of left wrist fracture are more properly rated under another Diagnostic Code. See 38 C.F.R. § 4.71a, Diagnostic Codes 5099-5024, 5214, 5215. In addition, the evidence does not reflect there are any other diseases of the trachea and bronchi that the Veteran's bronchial asthma is more properly rated under another Diagnostic Code. See 38 C.F.R. § 4.97, Diagnostic Code 6602. Accordingly, an increased evaluation under alternate Diagnostic Codes is not warranted.

Next, according to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. 

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. Yancy v. McDonald, 27 Vet.App. 484 (2016). Accordingly, referral for consideration of 38 C.F.R. § 3.321(b)(1) on a collective basis is not warranted in this case.

On an individual disability basis, the Board finds that the record does not show that the Veteran's individual disabilities were so exceptional or unusual as to warrant the assignment of a higher rating on an extra-schedular basis at any time during the appeal period. See 38 C.F.R. § 3.321(b)(1).

A comparison between the level of severity and symptomatology of the Veteran's assigned evaluation of 10 percent for residuals of left wrist fracture with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. See 38 C.F.R. § 4.71a, Diagnostic Codes 5099-5024, 5214, 5215. Throughout the course of the appeal, the Veteran's medical history includes swelling, pain, locking up, stiffness, soreness, aches, limited range of motion, and flare-ups. The factors set forth in DeLuca are considered as part of the Veteran's currently-assigned schedular rating. 38 C.F.R. §§ 4.40, 4.45.

A comparison between the level of severity and symptomatology of the Veteran's assigned evaluation of 30 percent for bronchial asthma with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. See 38 C.F.R. § 4.97, Diagnostic Code 6602. Throughout the course of the appeal, the Veteran's medical history includes limited PFT results, use of daily inhalational bronchodilator therapy and oral bronchodilator therapy, courses of systemic corticosteroid twice within a one-year period, shortness of breath, wheezing, asthma attacks, and cough. 

The Board acknowledges the Veteran reported at the August 2010 Board hearing that he had to go home because of his wrist once or twice in two years and that asthma kept him out of work 10 times since 2008. Nevertheless, because the rating criteria reasonably describe the claimant's disability levels and symptomatology, the Veteran's disability pictures are contemplated by the Rating Schedule, such that the assigned schedular evaluations are, therefore, adequate, and no remand for referral is required. Thun v. Peake, 22 Vet. App. 111, 115-16 (2008); VAOPGCPREC 6-96 (August 16, 1996). The evidence does not show anything unique or unusual about the Veteran's residuals of left wrist fracture or bronchial asthma that would render the current schedular criteria inadequate.

Based on the foregoing, the Board finds that the requirements for remand for referral for an extraschedular evaluation for the Veteran's service-connected disabilities under the provisions of 38 C.F.R. § 3.321(b)(1) have not been met. Bagwell v. Brown, 9 Vet. App. 337 (1996). Specifically, the first element of Thun has not been met, and thus, the required elements for extraschedular referral have not been satisfied. See Anderson v. Shinseki, 22 Vet. App. 423, 427 (2009) (clarifying that although the Court in Thun identified three "steps," they are, in fact, necessary "elements" of an extraschedular rating).

The Board has considered the possibility of staged ratings and finds that the schedular ratings for the disabilities on appeal have been in effect for the entire period on appeal. Accordingly, staged ratings are inapplicable. See Hart, 21 Vet. App. at 505.

Finally, a total disability rating based on individual unemployability (TDIU) is not warranted because the Veteran does not contend, and the evidence does not show, that his service-connected disabilities render him unemployable. Rice v. Shinseki, 22 Vet. App. 447 (2009); see also Jackson v. Shinseki, 587 F.3d 1106 (Fed. Cir. 2009). The record shows that he is gainfully employed. 

As such, the Board finds that the preponderance of the evidence is against the Veteran's appeals for initial higher ratings for residuals of left wrist fracture and bronchial asthma. Consequently, the benefit-of-the-doubt rule does not apply, and the appeals must be denied. 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102.


ORDER

An initial rating in excess of 10 percent for residuals of left wrist fracture is denied.

An initial rating in excess of 30 percent for bronchial asthma is denied.


____________________________________________
D. Martz Ames
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs